523 So.2d 190 (1988)
Ronnie ADAMS, Appellant,
v.
STATE of Florida, Appellee.
No. BT-168.
District Court of Appeal of Florida, First District.
April 12, 1988.
*191 Michael E. Allen, Public Defender, and Sharon Bradley, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Royall P. Terry, Jr., Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
Ronnie Adams appeals his conviction of possession of cocaine alleging that the trial court erred in denying his motion to suppress the evidence seized from him at the time of his arrest. We affirm.
During the evening of November 14, 1986, while Officer Jay Ethridge of the Tallahassee Police Department was patroling the "Frenchtown" section of Tallahassee, a section of town he knew to be a location used to make narcotics transactions, he observed a white male in a car that was stopped at a street corner occupied by several black males. Ronnie Adams, one of the black males, entered the passenger side of the car. Officer Ethridge followed the car as it made several turns in the downtown area and noticed that it seemed to be driven randomly instead of toward any particular destination. He observed that Adams was bent over the majority of the time and suspected that Adams was performing some illegal activity on the floorboard of the car. He then radioed for units to assist in stopping the vehicle.
When Officer Ethridge approached the car, he saw a beer can that had been fashioned into a crack cocaine smoking pipe on the floorboard behind the front passenger seat and fifty dollars on the console of the car. Another officer then conducted a patdown search of Adams, who was wearing a long coat. Officer Ethridge noticed that Adams appeared to be concealing something in his mouth, and knowing this to be a place commonly used to conceal narcotics, he asked Adams to open his mouth. Adams complied, but held his tongue between *192 his teeth and his lower lip, which was puckered out. Officer Ethridge asked Adams to move his tongue, but Adams would not lift it and appeared to be preparing to move something around to the side of his mouth. Officer Ethridge then applied pressure to a nerve point and three "fifty dollar" cocaine rocks fell out of Adams's mouth and into the assisting officer's hand.
Adams filed a motion to suppress the cocaine and paraphernalia alleging that the seizure resulted from an unconstitutional arrest or detention. At the hearing on this motion, Officer Ethridge testified that if he had waited for a search warrant before searching Adams, he could not have prevented him from swallowing the evidence. He stated that "Frenchtown" is a predominantly black section of town that contains several bars and that usually when police found white subjects in that area, they were found to be involved in criminal activities or drug transactions. Officer Ethridge stated that the police had observed that a modus operandi for drug transactions was the procedure whereby a narcotics seller enters a car belonging to a prospective purchaser. He further testified that during the three months prior to this incident, on at least six occasions he had personally observed transactions where a narcotics seller entered a buyer's car.
Adams challenges the search and seizure on two bases: (1) that the police did not have a well-founded suspicion upon which to base a stop of the vehicle in which he was riding; and (2) that the search of Adams's person which yielded the cocaine rocks was improper. The State contends that both the stop and the search were lawful, and that Adams has no standing to object to the stop nor the search because he was merely a passenger in the detained vehicle with no legitimate expectation of privacy.
The State's contention that Adams has no standing to object to the stop or resulting search is incorrect. The United States and Florida Constitutions forbid unreasonable searches and seizures. U.S. Const. amend. IV; Fla. Const. art. I, § 12. The Florida supreme court held in State v. Jones, 483 So.2d 433 (Fla. 1986), that "[u]nquestionably, stopping an automobile and detaining its occupant constitutes a seizure within the meaning of the fourth amendment to the United States Constitution."[1] 483 So.2d at 435. Regardless of any expectation of privacy, Adams clearly has standing to object to the stop of the vehicle in which he was riding since that stop resulted in his seizure. State v. Scott, 481 So.2d 40 (Fla. 3d DCA 1985); State v. Beja, 451 So.2d 882 (Fla. 4th DCA 1984).
Whether a vehicle stop is lawful depends upon whether it is predicated on a founded or reasonable suspicion that requires further investigation to determine whether the occupants of the vehicle have committed, are committing, or are about to commit a crime. McCloud v. State, 491 So.2d 1164 (Fla. 2d DCA 1986). Such suspicion must be articulable and based on objective facts. McClain v. State, 408 So.2d 721 (Fla. 1st DCA 1982), pet. for rev. dismissed, 415 So.2d 1361 (Fla. 1982). In determining whether sufficient evidence existed to support a founded suspicion, the court should consider all the facts known to the officer prior to the stop. State v. Lewis, 406 So.2d 79 (Fla. 2d DCA 1981).
Prior to this stop, Officer Ethridge knew the following facts: (1) "Frenchtown" is recognized as a high-crime area particularly known for narcotics transactions; (2) in "Frenchtown", at 8:30 on a Friday night, a black male entered the car of a white driver; (3) the car made several turns in the downtown area and appeared to be driven toward no particular destination; (4) the black male passenger was bent over, toward the floorboard, most of the time; and (5) a person entering the car of another in "Frenchtown" and then driving around with that person fit a modus operandi observed by the police in identifying narcotics transactions.
While the above facts, viewed separately, may not have risen to the level of a founded suspicion, we hold that when taken together, as viewed by Officer Ethridge, who *193 has four years experience in the Tallahassee Police Department, these facts were sufficient to justify a brief investigatory stop. See Kehoe v. State, 521 So.2d 1094 (Fla. 1988); Tamer v. State, 484 So.2d 583 (Fla. 1986).
We further hold that at least two exceptions to the warrant requirement justify the search of Adams's person: (1) search incident to arrest; and (2) probable cause to search, plus an emergency making it impracticable to obtain a warrant. While conducting a lawful investigatory stop, Officer Ethridge observed, in plain view, a cocaine smoking device on the floorboard of the car and fifty dollars in paper currency on the console of the car. Observation of these items gave the officers probable cause to arrest Adams and the right to conduct a warrantless search of Adams's person incident to that arrest. The fact that the search of Adams's mouth preceded the arrest is unimportant because probable cause to arrest existed absent the result of the search, the cocaine rocks, and arrest followed the search. Wright v. State, 418 So.2d 1087 (Fla. 1st DCA 1982), pet. for rev. denied, 426 So.2d 29 (Fla. 1983). Moreover, the search of Adams's person was justified because it was based upon probable cause to search plus an emergency which made it impracticable to obtain a warrant. Martin v. State, 360 So.2d 396 (Fla. 1978). Officer Ethridge had probable cause to believe a crime was being committed and he had probable cause to believe that Adams was hiding evidence of that crime in his mouth. If he had not forced Adams's mouth open, Adams easily could have swallowed the cocaine, resulting in the destruction of the evidence and, quite possibly, Adams's death. The possibility of either of these results is a sufficient "emergency" to fall within the noted exception to the warrant requirement.
AFFIRMED.
BOOTH and WIGGINTON, JJ., concur.
NOTES
[1] The search and seizure provision of the Florida Constitution is construed in conformity with the 4th Amendment to the United States Constitution. Art. I, Sec. 12, Fla. Const. (1987).